United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>CENTEX HOMES, NEWMEYER & DILLION, RGL INC., RGL FORENSICS, and DOES 1 through 10 inclusive,<br><br>    Defendants. | Case No. 13-0088-SC<br><br>Related Cases: 11-3638-SC, 12-0371-SC<br><br>ORDER RE: MOTIONS TO <u>DISMISS AND STRIKE</u> |

## I. **INTRODUCTION**

Plaintiff Travelers Property Casualty Company of America ("Travelers") brings this action against Defendants Centex Homes ("Centex"), Newmeyer & Dillion ("Newmeyer"), and RGL Inc. and RGL Forensics (collectively "RGL"). Centex and Newmeyer now move to dismiss and strike Travelers' Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(f). ECF Nos. 11 ("MTS"), 13 ("Centex/N&D MTD"). RGL has also filed a Rule 12(b)(6) motion to dismiss. ECF No. 27 ("RGL MTD").[1] Pursuant to Civil Local Rule 7-

---

[1] All three motions are fully briefed. ECF Nos. 15 ("Opp'n to MTS"), 17 ("Opp'n to Centex/N&D MTD"), 21 ("Reply ISO MTS"), 22

1(b), these motions are suitable for decision without oral argument. For the reasons set forth below, the motions are GRANTED in part and DENIED in part.

## II. BACKGROUND

Centex enters agreements with contractors and subcontractors to build various residential communities throughout California. ECF No. 1 ("Compl.") ¶ 10. Centex's subcontractors obtain general liability insurance policies in connection with the construction work they perform for Centex. Id. These policies name Centex as an additional insured. Id.

Centex was sued in a number of construction defect actions in California superior court, including fourteen which are relevant to the instant action. The relevant suits are the Acupan, Adams, Adkins, Ahlberg, Akins, Bradley, Cappawanna, Cartmill, Cooley, Conner, Deusenberry, Redig, Redhawk, and Spivack actions.[2] Centex retained the law firm of Newmeyer to defend its interests in these suits and to pursue coverage from insurance carriers, including Travelers. Id. ¶ 11. Travelers accepted a number of tenders made by Newmeyer on behalf of Centex and agreed to defend Centex in the underlying actions. Id. ¶ 12. Newmeyer used RGL as a third-party administrator to send out bills to insurance carriers, including Travelers, in connection with these underlying actions. Id. ¶ 13.

---

("Reply ISO Centex/N&D MTD"), 33 ("Opp'n to RGL MTD"), 35 ("Reply ISO RGL MTD").

[2] Travelers also brought suit in connection with the Bennett, Mira Ali, Mira Loma, Spicer, and Yunker actions. The parties subsequently stipulated to dismissal with prejudice of Travelers' claims to the extent that they are predicated on these five underlying actions. ECF No. 32.

2

Travelers alleges that Centex, Newmeyer, and RGL overbilled Travelers, that Travelers paid more than it was obligated to pay towards Centex's defense in fourteen underlying construction defect actions, and that Centex and Newmeyer were unjustly enriched as a result. Id. ¶ 14. Specifically, Travelers alleges that Centex fraudulently misrepresented (1) Newmeyer's hourly rates, (2) the scope of Centex's tenders, and (3) other carriers' agreements to participate in Centex's defense. Id. ¶ 35.

First, with respect to hourly rates, Tralevers points to the May 11, 2011 deposition of Jarett Coleman, Centex's general counsel and Rule 30(b)(6) witness, in an earlier case between Travelers and Centex in this District, Case No. 10-2757-CRB ("Travelers v. Centex I"). Id. ¶ 15. Mr. Coleman testified that Centex and Newmeyer have an informal agreement that Newmeyer will charge Centex a rate of $225 per hour for attorneys, $110 per hour for paralegals, $60 per hour for law clerks, and $135 per hour for in-house experts. Id. ¶ 16. These rates apply until an insurance carrier agrees to provide Centex with a defense, at which point they are allegedly increased to $515 per hour for attorney time, $210 per hour for paralegals, $70 per hour for law clerks, and $215 per hour for in-house experts. Id. ¶ 21. According to Travelers, Mr. Coleman's testimony shows that Newmeyer was charging Centex one rate and Travelers a higher rate. However, Mr. Coleman also testified that the lower rates paid by Centex merely represented an advance on Newmeyer's fees pending contribution from Centex's insurers. See Compl. Ex. C at 25. When asked what would happen if Centex's insurers refused to contribute to its defense costs, Mr. Coleman responded: "At the end of the day, we . . . have a discussion on .

. . what's owed, and certainly [Centex] will take care of our responsibility . . . , but that really hasn't become a big issue with us." Id.

Second, with respect to the scope of the tenders, Centex or its subcontractors purchased "wrap" insurance policies with regard to some or all of the work performed on the residential developments that are the subjects of the underlying construction defect actions. Id. ¶ 24. A wrap policy is designed to cover the owner, general contractor, and subcontractors on a particular project. Id. Travelers alleges that Centex and Newmeyer tendered to Travelers the defense of some of the underlying actions only with respect to the homes that were not covered by wrap policies, but then submitted defense costs related to both wrap and non-wrap homes. Id. ¶ 25. Travelers' Complaint points to the deposition of Colleen Vanderburg, the corporate representative for RGL in Travelers v. Centex I, wherein Ms. Vanderburg allegedly testified that wrap carriers agreed to pay only 75 percent of defense costs for wrap homes in the underlying actions. Id. ¶ 27. According to Travelers, Ms. Vanderburg further testified that Newmeyer instructed RGL to take the remaining 25 percent and charge it to the other non-wrap insurance carriers, including Travelers. Id. Curiously, the excerpts of Ms. Vanderburg's deposition that were attached to the Complaint do not evidence this testimony. See Compl. Ex. E.

As to the third and last set of alleged misrepresentations, Travelers pleads that Centex "by and through RGL" concealed from Travelers that certain carriers were participating in Centex's defense and thus misrepresented the percentage of fees paid by each

carrier. Id. ¶¶ 29-30. As a result of these misrepresentations, Centex and Newmeyer allegedly billed and received payments in excess of 100 percent of the actual fees and costs incurred in the defense of Centex in connection with the underlying construction defect actions. Id. ¶ 31. Travelers again points to Ms. Vanderburg's deposition in Travelers v. Centex I. Id. ¶ 35. Ms. Vanderburg allegedly testified that she advised Newmeyer that its requested allocations resulted in more than 100 percent of the total defense fees being billed out to the carriers. Id. The three-page deposition excerpt attached to the Complaint provides so little context that it is impossible to tell whether Travelers' allegations are consistent with Ms. Vanderburg's actual testimony. See Compl. Ex. E. Travelers also points to the deposition testimony of Gary L. Barrera, an attorney at Newmeyer. Id. ¶¶ 32-33. Travelers alleges that Mr. Barrera testified that Centex collectively billed insurance carriers for more than 100 percent of the total defense fees incurred in the Kent action, another construction defect suit that is not at issue in this case. Id. ¶ 33. Like the Vanderburg deposition excerpt, the two-page excerpt from Mr. Barrera's deposition attached to the Complaint is cryptic and lacks context. See Compl. Ex. D.

Travelers asserts causes of action against Centex, Newmeyer, and RGL for fraud, violation of California Business and Professions Code section 17200 (the Unfair Competition Law ("UCL")), breach of fiduciary duty, reimbursement, and accounting. Id. ¶¶ 568-596. Centex, Newmeyer, and RGL now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Centex and Newmeyer also move to strike paragraphs 29 through 35 of the Complaint.

## III. DISCUSSION

### A. Defendants' Motions to Dismiss

#### i. Legal standard

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud." "To satisfy Rule 9(b), a

pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and citations omitted).

### ii. Fraud

Centex and Newmeyer's motion to dismiss and RGL's motion to dismiss each raise different grounds for dismissing Travelers' fraud claims. The Court reviews the arguments advanced in Centex and Newmeyer's motion first and then proceeds to the arguments raised in RGL's motion.

#### a. Centex and Newmeyer's motion

The elements of fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage." Gil v. Bank of Am., N.A., 138 Cal. App. 4th 1371, 1381 (Cal. Ct. App. 2006). Centex and Newmeyer argue that Travelers could not have reasonably relied on their alleged misrepresentations concerning Newmeyer's rates, because Travelers knew about Newmeyer and Centex's rate agreement at the time Travelers paid Centex's invoices for defense fees. Centex/N&D MTD at 7. According to the Complaint, Mr. Coleman revealed the allegedly illicit rate agreement in a deposition taken by Travelers on May 11, 2011. Compl. ¶¶ 15-17. The Complaint also contains allegations that, in twelve of the fourteen construction defect actions, Travelers paid all of the invoices for Centex's defense fees and costs submitted after Mr. Coleman's deposition. Specifically, Travelers alleges that it paid invoices submitted

after June 28, 2011 in the Acupan, Ahlberg, Bennet, Cappawanna, Cartmill, Cooley, Deusenberry, Mira Loma, Redig, and Redhawk actions. See Compl. ¶¶ 85-86, 230-31, 291-92, 340-41, 358-59, 369-70, 410-11, 480-81, 487-88, 507-08.[3]

Travelers responds that the Complaint merely shows that, by May 11, 2011, Travelers had obtained testimony about the scheme from one individual. Opp'n to Centex/N&D MTD at 8. Travelers contends that it needed additional discovery to confirm and expand upon the information gathered from Mr. Coleman. Id. This argument is unpersuasive. Mr. Coleman was Centex's general counsel and 30(b)(6) witness. Thus, he was authorized to testify on behalf of Centex and, in fact, provided a detailed description of Centex and Newmeyer's billing arrangement. It is entirely unclear what more Travelers needed to confirm the fact that this allegedly illicit arrangement existed.

Travelers further argues that an April 4, 2012 correspondence from Newmeyer to Travelers shows that Travelers had not yet discovered the full extent of the alleged overbilling scheme on May 11, 2011. Id. at 8-9. In this correspondence, Newmeyer denies that it agreed to charge Centex $225 per hour for attorney time and insists that the $225 per hour that Centex had been paying Newmeyer merely represented an advance necessitated by the fact that insurance carriers routinely failed to provide an immediate, full and complete defense. Id. Ex. A. Nothing in this correspondence supports Travelers' contention that it did not discover the full

---

[3] Travelers also asserts that it paid invoices submitted after June 28, 2011 in the Spicer and Yunker actions. 516-17, 554-55. As discussed in note 2, supra, Travelers has stipulated to the dismissal of its claims to the extent that they are predicated on these actions.

8

1  extent of Newmeyer and Centex's alleged fraud until after May 11,
2  2011.  Newmeyer's correspondence merely reiterates the point made
3  in Mr. Coleman's May 11, 2011 deposition that Centex's payments to
4  Newmeyer represented an advance.  The correspondence offers no new
5  facts concerning Newmeyer and Centex's billing agreement.  Further,
6  Newmeyer's correspondence does not deny that Centex had been paying
7  Newmeyer for attorney time at a rate of $225 per hour.
8     Finally, Travelers argues that Mr. Coleman's deposition did
9  not reveal that Centex and Newmeyer were overbilling for
10 paralegals, law clerks, and in-house experts.  This argument is
11 also unpersuasive.  First, Travelers' Complaint contains no
12 allegations regarding when or how Travelers learned about
13 overbilling for non-attorney time.  See Compl. ¶ 18.  Second, in
14 light of Travelers' allegations regarding Mr. Coleman's testimony
15 about Newmeyer's attorney rates, it is implausible that Travelers
16 was unaware of this alleged overbilling scheme when Travelers paid
17 the invoices submitted by Newmeyer after May 11, 2011.  The
18 deposition transcript attached to the Complaint shows that Mr.
19 Coleman testified that Centex agreed to front a portion of
20 Newmeyer's rates.  Based on this testimony, Travelers had reason to
21 believe that Centex was paying a fraction of all of the rates
22 charged by Newmeyer.  At the very least, Travelers had reason to
23 investigate the matter before paying any invoices submitted by
24 Newmeyer after the May 11, 2011 deposition.

### b. RGL's motion

26 RGL moves to dismiss the remainder of Travelers' claim for
27 fraud on the ground that Travelers has not pled the claim with the
28 requisite particularity.  RGL MTD at 5-12.  Specifically, RGL

9

argues that Travelers' complaint fails to identify how RGL was involved in the alleged fraud. The Court disagrees. Travelers alleges that RGL knowingly billed Travelers for defense costs outside of the scope of Centex's tenders. See Compl. ¶¶ 24-28. Specifically, Travelers alleges that it only agreed to provide Centex with a defense in connection with non-wrap homes, and that RGL, at the direction of Newmeyer, billed Travelers for the defense of both wrap and non-wrap homes. See id. In support of these allegations, Travelers points to the deposition testimony of Ms. Vandeberg in Travelers v. Centex I. Id. ¶¶ 26-27. Together, these facts state a plausible claim for fraud.

RGL contends that "[m]erely citing to Ms. Vanderburg's testimony taken in another case is insufficient to plead fraud against RGL in this matter." MTD at 8. RGL further argues that Ms. Vanderburg was referencing a specific construction defect action in her deposition and was not making generalizations about RGL's billing practices. Id. But with or without Ms. Vanderburg's testimony, Travelers has pled sufficient facts to place RGL on notice of the particular circumstances constituting the alleged fraud. Whether or not Ms. Vanderburg's deposition testimony, along with any other evidence offered by Travelers, is adequate to prove that RGL engaged in fraud in this case is a question for another day and is not appropriate for Rule 12(b)(6) motion to dismiss. To hold that Travelers must come forth with more specific deposition testimony to survive a motion to dismiss would set an impossibly high pleading standard.

RGL also argues that Travelers has failed to plead sufficient facts to show that Travelers detrimentally relied on RGL's

10

misrepresentations or that RGL intended to defraud Travelers. MTD at 12. These arguments are also unavailing. Travelers has pled detrimental reliance by alleging that it paid more than its share of defense costs as a result of RGL's failure to disclose that Centex's defense bills included costs associated with wrap homes. With respect to intent, RGL is arguing the wrong pleading standard. Rule 9(b) requires a plaintiff to allege the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." Id. Accordingly, at this stage of the litigation, Travelers' general allegations as to intent are sufficient. See Compl. ¶ 572.

### c. Disposition

In sum, the facts alleged in the Complaint undermine Travelers' contention that it reasonably relied on Defendants' alleged misrepresentations concerning Newmeyer's hourly rates. Travelers' fraud claim is DISMISSED WITH PREJUDICE to the extent that it is predicated on allegations that it was overbilled for attorney time after May 11, 2011. Amendment would be futile because, to state a plausible claim, Travelers would need to plead facts inconsistent with those set forth in its operative complaint. Travelers' fraud claim is DISMISSED WITH LEAVE TO AMEND to extent that it is predicated on allegations that it was overbilled for the work of Newmeyer's paralegals, law clerks, and in-house experts after May 11, 2011. Consistent with the guidance set forth above, Travelers amended complaint shall set forth how it reasonably relied on Defendants' misrepresentations in this regard.

///

### iii. UCL

The UCL prohibits unfair competition, including, inter alia, "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200. "Because [section 17200] is written in the disjunctive, it establishes three varieties of unfair competition— acts or practices which are unlawful, or unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007) (quotations omitted). While it appears that Travelers is suing under the fraudulent prong of the UCL, it has failed to allege as much. Further, to the extent that Travelers intends to bring a cause of action under the fraudulent prong of the UCL, it has failed to state a claim. For the purposes of the UCL, "a fraudulent business practice is one that is likely to deceive members of the public." Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1255 (Cal. Ct. App. 2009). As RGL points out, Travelers fails to explain how the fraudulent practices alleged here, which relate to a single private commercial insurance transaction, could possibly mislead the public. Accordingly, Travelers' UCL claim is DISMISSED in its entirety. The Court grants Travelers leave to amend to cure the deficiencies described above.

### iv. Breach of fiduciary duty

"In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (Cal. Ct. App. 1991). RGL moves to dismiss Travelers' claim for

12

breach of fiduciary duty on the grounds that Travelers has failed to allege sufficient facts to establish that it was in a fiduciary relationship with RGL. RGL MTD at 15. Travelers responds that the Complaint shows a fiduciary relationship "based on RGL's capacity as the third-party administrator retained to collect payments made by Travelers (and others) for disbursement to Centex and Newmeyer." Opp'n to RGL MTD at 11. This argument is unavailing. The fact that Centex and Newmeyer retained RGL to collect payments from Travelers and other insurers may evidence a fiduciary relationship between RGL and Centex, but it does not establish a fiduciary relationship between RGL and Travelers. Equally unpersuasive is Travelers' contention that a fiduciary relationship existed here merely because RGL acted as a trustee "as to the money" it collected from Travelers. See Opp'n at 11. Accordingly, Travelers' claim for breach of fiduciary duty is DISMISSED WITH PREJUDICE as to RGL.

### v. **Reimbursement**

As part of its claim for reimbursement, Travelers alleges that when it agreed to participate in Centex's defense in the underlying construction defect actions, it specifically reserved its right to seek reimbursement from Centex for any defense-related payments that were not potentially covered. Compl. ¶ 588. Travelers further alleges that it has the right to reimbursement from all three defendants because they collected more attorney's fees than they were legally entitled to collect, intentionally overbilled Centex, and submitted bills for a portion of the defense of wrap homes. Id. ¶ 590.

Newmeyer and RGL move to dismiss on the ground that Travelers

13

has no legal basis for seeking reimbursement against them. Centex/N&D MTD at 10-11; RGL MTD at 16. The Court agrees. Travelers has asserted no contractual basis for seeking reimbursement against Newmeyer or RGL. Nor has Travelers enunciated any independent legal right to reimbursement against them. Under California law, an insurer has a right of reimbursement against an insured for defense costs incurred as a result of defending claims that were "not even potentially covered" by the subject policy. Buss v. Super. Ct., 16 Cal. 4th 35, 39 (Cal. 1997). However, neither Newmeyer nor RGL is an insured under any of the policies involved in this case.

Travelers asserts that it has an independent right to reimbursement against Newmeyer and RGL under California Penal Code sections 550(b)(1) and 550(c)(4). Opp'n to Centex/N&D MTD at 13-15. This argument was previously rejected in a related case. See Travelers Prop. Cas. Co. of Am. v. Centex Homes, C 12-0371 PJH, 2013 WL 141201, at *1 (N.D. Cal. Jan. 11, 2013). It fares no better now. Penal Code section 550(b)(1) provides that it is unlawful to knowingly present false or misleading information in support of a claim for payment pursuant to an insurance policy. Under section 550(c)(4), "[r]estitution shall be ordered for a person convicted of violating this section." As this is not a criminal action, there is no possibility that RGL will be "convicted" of presenting false or misleading information. Accordingly, section 550(b)(1) and 550(c)(4) are inapposite here.

For these reasons, Travelers' claim for reimbursement is DISMISSED WITH PREJUDICE as to RGL and Newmeyer.

14

### vi. Accounting

Travelers asserts a claim for accounting, alleging that all of the named defendants wrongfully collected more attorney's fees and costs than they were legally entitled to collect, resulting in their possession of monies rightfully belonging to Travelers. Compl. ¶ 595. RGL moves to dismiss this claim on the ground that Travelers has merely asserted that RGL acted as a third-party administrator and has alleged no facts establishing that RGL kept any of the fees and costs collected from Travelers. MTD at 17. Travelers responds that no federal or California authority requires a showing that the defendant personally has monies belonging to the plaintiff.

However, California law does require "a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (Cal. Ct. App. 2009). The authority cited by Travelers suggests that the requisite relationship may exist where the defendant takes over assets which may belong to the plaintiff, id., "where . . . the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable," Civic W. Corp. v. Zila Indus., Inc., 66 Cal. App. 3d 1, 14 (Cal. Ct. App. 1977) (internal quotations omitted), or where the amount of money owed to Plaintiff is unknown and cannot be determined without an accounting, Cordon v. Wachovia Mortgage, 776 F. Supp. 2d 1029, 1040 (N.D. Cal. 2011).

The facts pled in the Complaint suggest that the second and third conditions could plausibly apply here. Travelers alleges

15

that all of the defendants took steps to overbill Travelers for Centex's defense costs. An accounting of Centex's third-party administrator might be necessary to determine Travelers' damages. Accordingly, RGL's motion to dismiss Travelers' claim for an accounting is DENIED.

### vii. The Redig Action

Newmeyer and Centex also move to dismiss Travelers' claims to the extent that they are predicated on the Redig action because Travelers is also pursuing claims arising out of this construction defect lawsuit in Sacramento County Superior Court. Specifically, Newmeyer and Centex point to Travelers' Amended Cross-Complaint in Centex Homes v. Ad Land Venture, et al., Case No. 34-2011-01112151. ECF No. 14 ("Centex/N&D RJN") Ex. A ("Ad Land Am. Cross Compl."). In that Cross-Complaint, Travelers contends that its obligation for Newmeyer's defense fees is limited to the rate of $225 per hour "and not the inflated higher rate which Centex was never obligated to pay." Id. ¶ 100. Travelers has made similar allegations here. However, as set forth in Section III.A.ii supra, the Court has dismissed Travelers' fraud claim to the extent that it is predicated on allegations that Travelers was overbilled for attorney fees in the Redig action. Accordingly, there is no longer a risk of duplication or inconsistent judgments as to the Redig action.[4]

---

[4] In any event, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). Courts may decline to exercise federal jurisdiction in consideration of a parallel state action only in exceptional circumstances. Id. This case does not present such exceptional circumstances.

**B.  Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice."  Rosales v. Citibank, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation."  Platte Anchor Bolt, Inc. v. IHI, Inc., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

Newmeyer and Centex move to strike paragraphs 29 through 35 of the Travelers' Complaint, as well as Complaint Exhibits D and E.  In these paragraphs, Travelers alleges that Centex and Newmeyer, by and through RGL, concealed that certain insurance carriers were participating in Centex's defense and thus misrepresented to Travelers the percentage of Newmeyer's fees being paid by each carrier.  In paragraph 33, Travelers alleges that Mr. Barrera testified at his deposition that Centex billed insurance carriers for more than 100 percent of the total defense fees incurred in the Kent action.  In paragraph 35, Travelers alleges that Ms. Vanderburg testified that Newmeyer billed insurance carriers for more than 100 percent of Centex's defense costs.  Exhibits D and E to the Complaint contain short excerpts from the depositions of Ms. Vanderburg and Mr. Barrera.  These excerpts are so short and provide so little context that it is unclear about what the deponents are actually testifying.

17

Centex and Newmeyer move to strike paragraphs 29 through 35 and Exhibits D and E on the ground that they relate to the Kent action. MTS at 5. As Centex and Newmeyer point out, Travelers does not assert any causes of action related to the Kent action in this case. Id. Further, the Defendants argue that to the extent that Travelers does assert claims related to the Kent action, those claims are duplicative of claims asserted in a related case currently pending before the undersigned. Id. Travelers responds that many of the allegations targeted by the motion to strike are unrelated to the Kent action. MTS Opp'n at 1. Travelers also argues that the allegations which do relate to the Kent action show that Centex and Newmeyer "have a pattern and practice" of misrepresenting the number of insurance carriers participating in Centex's defense. Id.

The Court finds that the Complaint's references to the Kent action are redundant and immaterial. Travelers asserts six causes of action based on the defendants' conduct in fourteen underlying construction defect suits. Not one of these suits is the Kent action. That Centex and Newmeyer may have made misrepresentations in connection with the Kent action is irrelevant here. If Travelers wishes to establish a pattern or practice of misrepresentation, then it can point to the defendants' conduct in the fourteen construction defect actions at issue in this case. Accordingly, the Court strikes paragraph 33 of the Complaint, the only paragraph that expressly references the Kent action. Paragraphs 29 through 32, 34 through 35, and Exhibits D and E remain undisturbed, as Centex and Newmeyer have failed to enunciate a coherent reason why they should be struck.

18

## IV. CONCLUSION

For the foregoing reasons, Defendants Centex Homes and Newmeyer & Dillion's motion to dismiss is GRANTED in part and DENIED in part, as is Defendants RGL Inc. and RGL Forensics' motion to dismiss.

- Plaintiff Travelers Property Casualty Company of America's claim for fraud is DISMISSED WITH PREJUDICE to the extent that it is based on allegations that Travelers was overbilled for attorney time after May 11, 2011. Traveler's fraud claim is dismissed with leave to amend to the extent that it is predicated on allegations that Travelers was overbilled for non-attorney time after May 11, 2011.
- Travelers' UCL claim is DISMISSED with leave to amend.
- Travelers' claim for breach of fiduciary duty is DISMISSED WITH PREJUDICE as to RGL.
- Travelers' claim for reimbursement is DISMISSED WITH PREJUDICE as to RGL and Newmeyer.

Centex and Newmeyer's motion to strike is also GRANTED in part and DENIED in part. The Court hereby strikes paragraph 33 of Travelers' Complaint.

IT IS SO ORDERED.

Dated: May 30, 2013

_____
UNITED STATES DISTRICT JUDGE

19