|  |  |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>CENTEX HOMES, NEWMEYER & DILLION, RGL INC., RGL FORENSICS, and DOES 1 through 10 inclusive,<br><br>            Defendants.<br><br>AND RELATED COUNTERCLAIMS. | ) Case Nos. 12-0371-SC, 13-<br>) 0088-SC<br>)<br>) Related Case: 11-3638-SC<br>)<br>) ORDER (1) GRANTING<br>) CENTEX'S MOTION TO<br>) DISMISS, (2) DENYING<br>) CENTEX'S MOTION TO STRIKE,<br>) AND (3) GRANTING IN PART<br>) AND DENYING IN PART N&D'S<br>) <u>MOTION TO DISMISS</u><br>)<br>)<br>) |

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

## I.   **INTRODUCTION**

Insurer Travelers Property Casualty Company of America ("Travelers") brings these two related actions, case numbers 12-0371 (the "'371 Action") and 13-0088 (the "'88 Action"), against its insured Centex Homes ("Centex"); Centex's counsel, Newmeyer & Dillion, LLP ("N&D"); and RGL Inc. and RGL Forensics (collectively ("RGL"), Centex's claims administrator.  Travelers recently filed a Fourth Amended Complaint ("4AC") in the '371 Action and a First Amended Complaint ("1AC") in the '88 Action.  The legal claims and

theories asserted in both complaints are identical and the underlying facts are substantially similar. Centex has filed a motion to dismiss and a motion to strike the 4AC and 1AC. Dkt. Nos. 47 ("Centex MTD"), 48 ("Centex MTS").[1] N&D has joined Centex's motions and filed a motion to dismiss of its own. Dkt. 49 ("N&D MTD"). All three motions are fully briefed and appropriate for determination without oral argument per Civil Local Rule 7-1(b).[2] For the reasons set forth below, the Court GRANTS Centex's motion to dismiss, DENIES Centex's motion to strike, and GRANTS in part and DENIES in part N&D's motion to dismiss.

## II. BACKGROUND

Centex is a general contractor that builds homes throughout California. Centex's contractors have taken out insurance policies with Travelers which name Centex as an additional insured. In the last several years, homeowners have brought a number of construction defect suits against Centex in connection with the work of its contractors. Centex tendered these actions to Travelers, giving rise to a series of legal disputes about the scope of Travelers' duty to defend and duty to indemnify.

In both the '371 and '88 Actions, Travelers alleges that Defendants engaged in a fraudulent scheme to overbill insurers for the cost of Centex's legal fees in connection with the underlying

---

[1] All relevant documents have been filed to the dockets of both the '88 Action and '371 Action. For the sake of clarity and brevity, the Court refers only to the docket in the '88 Action.

[2] Dkt Nos. 52 ("Opp'n to Centex MTS"), 54 ("Opp'n to N&D MTD"), 55 ("Opp'n to Centex MTD"), 56 ("Reply ISO Centex MTD"), 57 ("Reply ISO N&D MTD"), 58 ("Reply ISO Centex MTS"). The Court looks to the content of the briefs rather than the captions, as the two sometimes do not match.

2

construction defect actions. The general allegations and claims asserted are the same in both actions. In both actions, Travelers alleges that Defendants fraudulently misrepresented (1) N&D's hourly rates, (2) the scope of Centex's tenders, and (3) other carriers' agreements to participate in Centex's defense.

The instant motions focus on the first category of alleged misrepresentations, so the Court takes a moment to describe it in more detail. According to the 1AC and 4AC, N&D allegedly charged Centex a reduced hourly rate, but charged Travelers a higher rate once the insurer agreed to participate in Centex's defense. Travelers' allegations are based in part on the May 11, 2011 deposition testimony of Centex's general counsel, Jarrett Coleman ("Coleman"). According to the deposition transcript attached to the pleadings, this informal agreement was a way for Centex to provide N&D with an advance pending Travelers' assumption of its duty to defend. 1AC Ex. C. However, Travelers alleges that because N&D was essentially creating two sets of bills and because there was no written or oral agreement obligating Centex to pay N&D's full fees, the arrangement is fraudulent.

The underlying construction defect actions in the '371 and '88 Actions overlap, though there are some differences. The underlying cases in the 1AC in the '88 Action are the Acupan, Adams, Adkins, Ahlberg, Akin, Bennett, Bradley, Cappawana, Cartmill, Cooley, Conner, Deusenberry, Mir Ali, Mira Loma, Redig, Redhawk, Spicer, Spivak, and Yunker actions. The underlying cases in the 4AC in the '371 Action are the Adams, Adkins, Agles, Ahlberg, Akin, Allie, Balangue, Bradley, Briseno, Cooley, Garvey, Johnson, Spicer, and Tapia actions.

3

As to the procedural history, the '371 Action was filed in January 2012, and was originally assigned to Judge Hamilton, who ruled on several motions to dismiss before transferring the case to the undersigned. Rather than amending its pleading in the '371 Action, Travelers filed the '88 Action in January 2013. The case was initially assigned to Judge Tigar. In April 2013, both the '371 Action and the '88 Action were related to an earlier case that Travelers had filed against Centex, which was pending before the undersigned. The undersigned now presides over all three cases.

On May 30, 2013, after the reassignments, the undersigned ruled on motions to dismiss, strike, and amend in both the '371 Action and the '88 Action. Dkt. Nos. 41 ("'371 Order"), 42 ("'88 Order"). The Court also consolidated the actions for trial. Dkt. No. 43. However, in light of the multiple rounds of pleading and motions to dismiss already filed in the '371 Action, the Court opted not to allow Travelers to consolidate its pleadings. Travelers subsequently filed a 4AC in the '371 Action and 1AC in the '88 Action. Both pleadings assert causes of action for fraud; violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; breach of fiduciary duty; reimbursement; and accounting. Centex and N&D now move to dismiss and strike the amended pleadings.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).[3] The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

Pursuant to Federal Rule of Civil Procedure 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." "The purposes of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." Barnes v. AT&T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring

---

[3] Travelers' discussion of the relevant legal standard relies on Conley v. Gibson, 355 U.S. 41 (1957), and its progeny, and ignores the sea change brought about by Iqbal and Twombly. See Opp'n to Centex MTD at 7-8.

resolution on the merits." Id.

## IV. DISCUSSION

For the purposes of the instant motions, the 1AC in the '88 Action and the 4AC in the '371 Action are identical in most relevant respects. Accordingly, the parties often refer to the actions interchangeably or jointly. The Court does the same. The Court addresses the pending motions in the following order: (1) Centex's motion to dismiss, (2) Centex's motion to strike, and (3) N&D's motion to dismiss.

### A. Centex's Motion to Dismiss

Centex moves to dismiss Travelers' claims for violation of the UCL and fraud. It also moves to dismiss Travelers' claims to the extent that they are predicated on the Bennett, Mir Ali, Mira Loma, Spicer, and Yunker actions. The Court addresses each argument in turn.

#### 1. UCL

The UCL prohibits all unlawful, unfair, or fraudulent conduct. See Cal. Bus. & Prof. Code § 17200. Each prong can be a separate cause of action. Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007). Neither the 1AC nor the 4AC expressly identify the prong or prongs under which Travelers is suing. Centex argues that the facts alleged do not support a claim under any prong of the UCL. Centex MTD at 7-10. Before turning to the plausibility of Travelers' UCL claims, the Court addresses Travelers' argument that Centex's motion to dismiss the UCL claims is barred by the law of the case.

///

### i. Law of the Case

Travelers argues that Centex previously raised identical arguments concerning its UCL claim when Centex moved to dismiss Travelers' Third Amended Complaint in the '371 Action, and that Judge Hamilton necessarily rejected those arguments when she denied Centex's motion to dismiss. Opp'n to Centex MTD at 8-9. Travelers further argues that the law of the case doctrine, which generally precludes a court from reopening previously decided issues, now bars the Court from revisiting the plausibility of its UCL allegations in both the '371 and '88 Actions. See id. Centex responds that the law of case favors taking up its arguments, since the undersigned previously addressed the viability of Travelers' UCL claims when it ruled on Centex's prior motion to dismiss in the '88 Action.[4] Reply ISO Centex MTD at 9-10.

The Court finds that the law of the case does not preclude it from considering Centex's arguments. As an initial matter, Judge Hamilton never directly addressed Centex's arguments in favor of dismissing Travelers' UCL claims. See '371 Action Dkt. No. 87. As Travelers points out, the law of the case doctrine applies to issues decided explicitly or by necessary implication in a court's previous disposition, thus Judge Hamilton need not have directly ruled on an argument to establish the law of the case. See Leslie Salt Co. v. United States, 55 F.3d 1388, 1393 (9th Cir. 1995). However, Travelers has placed the Court in a unique position by filing duplicative actions that assert the same claims and the same legal theories against the same parties based on the same facts.

---

[4] In opposing Centex's earlier motion to dismiss in the '88 Action, Travelers neglected to mention Judge Hamilton's earlier ruling in the '371 Action. See Dkt. No. 17.

7

To the extent that the undersigned's May 30 Order in the '88 Action is inconsistent with Judge Hamilton's prior order in the '371 Action -- and the Court does not think that it is -- the Court must now provide some clarity and consistency on the issue since the two cases have been consolidated for trial.  Accordingly, the Court turns to the merits of Centex's arguments.

### ii. Unlawful Conduct

Centex argues that Travelers cannot assert a claim under the unlawful prong of the UCL since Travelers has yet to allege an unlawful action.  Centex MTD at 7-8.  A plaintiff can state a claim under the unlawfulness prong by pleading that a business practice violates a predicate law.  See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (Cal. 1999).  In its opposition brief, Travelers argues that it intends to assert a predicate violation of California Rule of Professional Conduct 4-200.  Opp'n to Centex at 12.  Setting aside that this claim does not appear anywhere in the pleadings, Travelers argument fails for a number of reasons.  As an initial matter, since neither Centex nor RGL are members of the Bar, they do not have an obligation to comply with the California Bar's Rules of Professional Conduct.

As to N&D, the Rules of Professional Conduct do not constitute predicate laws for the purposes of the UCL.  First, the Rules are not laws.  Indeed, Rule 1-100(A) provides: "These rules are not intended to create new civil causes of action."  Moreover, even if a violation of the Rules could serve as a predicate act, Travelers has not alleged such a violation.  Rule 4-200(A) prohibits an attorney from charging an "unconscionable fee."  In determining the unconscionability, the bar considers "[t]he amount of the fee in

proportion to the value of the services performed," and "[t]he informed consent of the client to the fee." Cal. R. Prof. Conduct 4-200(B). Here, N&D's rates for attorneys, which range from around $240 to $515, are hardly disproportionate, and there is no indication that N&D failed to secure the informed consent of Centex.

Accordingly, Travelers' UCL claim for unlawful conduct is DISMISSED WITH PREJUDICE in both the '371 Action and the '88 Action.

### iii. Unfair Conduct

The standards applicable to a UCL unfairness cause of action are something of a moving target, even for California's appellate courts. See Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (Cal. Ct. App. 2011) (reviewing California appellate courts' differing standards for UCL unfairness); Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255, 1261 (Cal. Ct. App. 2006) (same, and asking California Legislature or Supreme Court to clarify standard). Travelers now attempts to invoke the "balancing test" and the "tethering test" for unfair conduct.

The former test involves "balancing the harm to the consumer [or victim] against the utility of the defendant's practice." Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 735 (9th Cir. 2007). Under the latter test, the plaintiff must show that unfair conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal. 4th at 187. In other words, "the public policy which is a

1 predicate to a consumer unfair competition action under the
2 'unfair' prong of the UCL must be tethered to specific
3 constitutional, statutory, or regulatory provisions." Bardin, 136
4 Cal. App. 4th at 1260-61.

5 The Court agrees with Centex that Travelers cannot state a
6 claim under the balancing test because Travelers is not a consumer.
7 See Lozano, 504 F.3d at 735-736 (finding California courts have
8 rejected the balancing test in suits involving unfairness to the
9 defendant's competitors but have yet to reach a consensus in the
10 consumer action context). Moreover, Travelers' theory that
11 Defendants' actions raise insurance rates for consumers is far too
12 tenuous to be plausible.

13 As to the tethering test, Travelers has yet to enunciate how
14 its claims are tethered to a specific constitutional, statutory, or
15 regulatory provision. Travelers' argument that its claims are
16 tethered to California Rule of Professional Conduct 4-200 fails for
17 the reasons outlined in Section IV.A.1.ii supra. Travelers also
18 appears to argue that its claims are tethered to California's
19 policy against insurance fraud. See Opp'n to Centex MTD at 15.
20 However, under this theory, Travelers' unfairness claim rises and
21 falls with its fraud claims and is therefore duplicative and
22 unnecessary.

23 Moreover, to the extent that Travelers' UCL unfairness claim
24 is not predicated on its allegations of fraud, that claim is
25 arguably inconsistent with California public policy. In Buss v.
26 Superior Court, 16 Cal. 4th 35 (Cal. 1997), the California Supreme
27 Court laid out a comprehensive framework for when and how an
28 insurer may seek reimbursement from its insured for defense costs.

10

1  Travelers cannot circumvent the Buss framework by bringing a UCL
2  unfairness claim.  Nor can Travelers plausibly assert that
3  Defendants engaged in unfair business practices by asserting
4  Centex's rights under the Travelers' policies.
5      In sum, Travelers is either conflating UCL unfairness with
6  fraud or attempting to bring a Buss claim for reimbursement under
7  the guise of the UCL unfairness prong.  In either case, its claim
8  for UCL unfairness fails.  Accordingly, that claim is DISMISSED
9  WITH PREJUDICE.

### iv. Fraudulent Conduct

11     For the purposes of the UCL, "a fraudulent business practice
12 is one that is likely to deceive members of the public."  Morgan v.
13 AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1255 (Cal. Ct.
14 App. 2009) (quotations omitted).  Centex argues that Travelers' UCL
15 fraud claim fails because Travelers has not alleged a fraudulent
16 act or practice that affects the general public.  Centex MTD at 10.
17     Centex's argument has merit.  As the Central District of
18 California held in Watson Laboratories, Inc. v. Rhone-Poulenc
19 Rorer, Inc.: "Though many courts have described the scope of
20 business activities prohibited by § 17200 in sweeping terms, there
21 is no case authority that 'fraudulent' business acts are separately
22 actionable by business competitors absent a showing that the
23 public, rather than merely the plaintiff, is likely to be
24 deceived." 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001); see also
25 Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc., 319 F. Supp. 2d
26 1059, 1078 (C.D. Cal. 2003) ("Sophisticated companies, like
27 Plaintiffs here, are not members of the 'general public.'").
28     As Travelers points out, the UCL expressly allows for actions

by private corporations. See Cal. Bus. & Prof. Code §§ 17201, 17204. However, both private individuals and corporations must show that the alleged wrongdoing has some impact on the general public. See Watson, 178 F. Supp. 2d at 1121. Here, Travelers has not alleged that Defendants made any statements to the public, let alone engaged in an action which was likely to deceive members of the public. Rather, Travelers is trying to use the UCL fraud prong to vindicate its contractual and reimbursement rights against its insured and its insured's representatives. This it cannot do.[5]

Accordingly, Travelers' claim for UCL fraud, along with Travelers' other UCL claims are DISMISSED WITH PREJUDICE in both the '88 and '371 Actions.

### 2. Fraud

In its May 30 Order in the '88 Action, the Court dismissed Travelers' claim for fraud to the extent that it was based on allegations that N&D overbilled Travelers for attorney time after May 11, 2011. '88 Order at 19. The Court reasoned that because Coleman revealed N&D and Centex's allegedly illicit rate agreement in a deposition taken by Travelers on May 11, Travelers could not have reasonably relied on the allegedly fraudulent invoices sent after May 11. Id. at 7-9.

In connection with the prior Order, Travelers argued that it could still assert a fraud claim based on overbilling for non-

---

[5] Even if Travelers did have standing to bring a UCL fraud claim, it has failed to plead justifiable reliance as to N&D invoices filed after May 11, 2011. As explained in the '88 Order and in Section IV.A.2 infra, Travelers was aware of N&D and Centex's alleged overbilling scheme as early as May 11, 2011, when it was disclosed at the Coleman deposition. Contrary to Travelers' argument, it must still show reliance to establish UCL fraud. See In re Tobacco II Cases, 46 Cal. 4th 298, 306 (Cal. 2009).

12

1 attorney time because Coleman's deposition did not reveal that
2 Centex and Newmeyer were overbilling for paralegals, law clerks,
3 and in-house experts.  Id. at 9.  The Court disagreed, holding:

> [I]n light of Travelers' allegations regarding Mr. Coleman's testimony about Newmeyer's attorney rates, it is implausible that Travelers was unaware of this alleged overbilling scheme when Travelers paid the invoices submitted by Newmeyer after May 11, 2011. The deposition transcript attached to the Complaint shows that Mr. Coleman testified that Centex agreed to front a portion of Newmeyer's rates.  Based on this testimony, Travelers had reason to believe that Centex was paying a fraction of all of the rates charged by Newmeyer.  At the very least, Travelers had reason to investigate the matter before paying any invoices submitted by Newmeyer after the May 11, 2011 deposition.

Id.  The Court granted Travelers leave to amend to show how it reasonably relied on N&D and Centex's misrepresentations regarding non-attorney time billed after May 11, 2011.  In a concurrently filed order, the Court found that Travelers' fraud claim in the '371 Action failed on the same grounds.  '371 Order at 14-15.

In the 4AC and 1AC, Travelers once again alleges that it learned of the allegedly fraudulent billing scheme during the May 11, 2011 deposition of Coleman.  In attempt to comply with the guidance set forth in the Court's May 30 Orders, Travelers also alleges that it deposed Coleman again on February 28, 2012.  During this deposition, Coleman was asked about the discounted rate for paralegal work.  1AC Ex. E at 21.  Coleman responded: "You know, I don't think there's a discount for paralegals.  I'd have to go back and back and double check."  Id.  Travelers alleges that, based on that testimony, it "believed that the hourly rate N&D billed Travelers for work performed by paralegals, law clerks[,] and in-

13

house experts reflected the actual amount that N&D charged Centex for such work." Id. ¶ 20.

The Court finds that these new allegations fail to show that Travelers reasonably relied on N&D invoices for non-attorney time submitted after May 11, 2011. The facts alleged demonstrate that Travelers did not take any action to investigate N&D's allegedly fraudulently billing scheme until nine months after Coleman's first deposition. There is no indication that Travelers withheld payments during this nine-month period or even questioned N&D about its invoices. Travelers cannot plausibly claim that it reasonably relied on N&D's rate representations when it had reason to investigate them, but continued to pay N&D's invoices without question for almost a year. Moreover, Coleman's February 2012 testimony was equivocal. Coleman did not expressly deny that Centex was offered a discounted rate for non-attorney time. Rather, he merely testified that he could not comment on the practice with any certainty.

For these reasons, Travelers' fraud claim is DISMISSED WITH PREJUDICE to the extent that it is predicated on N&D invoices for attorney and non-attorney time submitted after May 11, 2011.

### 3. **The Bennett, Mir Ali, Mira Loma, Spicer and Yunker Actions**

Centex argues that Travelers' claims regarding the Bennett, Mir Ali, Mira Loma, Spicer and Yunker Actions are barred because the parties previously stipulated to the dismissal of these claims with prejudice. Centex MTD at 18. In its opposition, Travelers concedes that it is not seeking relief in connection with these underlying actions. Opp'n at 21. After the motion to dismiss was

14

fully briefed, Travelers stipulated to strike all references to these actions from its 1AC and 4AC. Dkt. No. 63. Accordingly, it appears that the dispute over these actions is now moot. To the extent that it is not, the Court dismisses Travelers' claims in both the '88 and '371 Actions, to the extent that they are predicated on the Bennett, Mir Ali, Mira Loma, Spicer and Yunker actions.

### B. Centex's Motion to Strike

Centex moves to strike allegations relating to (1) the Spicer action, and (2) Defendants' alleged scheme to overbill for attorney time after May 11, 2011. Travelers concedes that is not seeking relief pertaining to the Spicer Action. Opp'n to MTS at 7. In any event, the parties have since stipulated to strike the Spicer allegations. Dkt. No. 63. Accordingly, Centex's motion to strike the Spicer allegations is DENIED as moot.

As to the motion to strike allegations regarding post-May 11 invoices, Centex appears to proceed under the assumption that Travelers can continue to pursue dismissed claims until the allegations underlying those claims are struck from the pleadings. That is simply not true. The Court declines to go through the unnecessary and time-consuming exercise of going through the pleadings line-by-line and striking particular factual allegations when the Court has already ruled on the merits of Travelers' claims for relief. Since the allegations regarding the post-May 11 invoices may support other claims that remain in the action, the Court declines to disturb them.

The purpose of a motion to strike is "to avoid spending time and money litigating spurious issues." Barnes, 718 F. Supp. 2d at

15

1170. The instant motion to strike does the opposite and is therefore DENIED.

### C. N&D's Motion to Dismiss

Travelers' remaining claims against N&D are breach of fiduciary duty, accounting, and fraud. N&D now moves to dismiss the claims for breach of fiduciary duty and accounting on the ground that such claims are barred by the California Court of Appeal's recent decision in J.R. Marketing, L.L.C. v. Hartford Casualty Insurance Co., 216 Cal. App. 4th 1444 (Cal. Ct. App. 2013).[6]

In J.R. Marketing, the defendant insurer, Hartford, refused to defend or indemnify the plaintiff insured in an underlying lawsuit. 216 Cal. App. 4th at 1449. The insured hired the law firm of Squire Sanders L.L.P. ("Squire") to defend it in the underlying action and bring suit against Hartford for coverage. Id. On summary adjudication, the trial court found that the insured was entitled to Cumis counsel from the date it tendered the underlying action.[7] Id. at 1449. The trial court also found that Hartford could not invoke certain provisions of California Civil Code section 2860, which cap the amount of fees payable to Cumis counsel, since Hartford had breached and continued to breach its defense obligations. Id. at 1450. Squire took on the role of Cumis counsel, and the underlying litigation was resolved. Id. at

---

[6] N&D also argues that Travelers' UCL claim against it is barred by J.R. Marketing. However, the Court has already dismissed that claim on other grounds. See Section IV.A.1 supra. Both parties agree that J.R. Marketing has no bearing on Travelers' fraud claim against N&D.

[7] In California, an insured is entitled to independent counsel, a.k.a. Cumis counsel, where a conflict exists because of an insurer's control over the litigation. See Cal. Civ. Code § 2860.

16

1452. The insured then submitted Squire's invoices to Hartford, and Hartford paid them. Id. Thereafter, Hartford filed a cross-complaint against the insureds and Squire, seeking reimbursement of all unreasonable or unnecessary fees and costs paid to Squire. Id.

On appeal, the court found that Hartford did not have a right to seek reimbursement from Squire. The court reasoned that California law clearly barred an insurer in breach of its duty to defend from imposing on its insured its own choice of counsel. Id. at 1458. The court stated that it was taking the law "one step further" by holding that an insurer in breach of its duty to defend also could not maintain a direct suit against its insured's independent counsel for unreasonable or unnecessary fees. Id. The court reasoned: "Retroactively imposing the insurer's choice of fee arrangement for the defense of the insured by means of a post-resolution quasi-contractual suit for reimbursement against the insured's separate counsel . . . runs counter to these Cumis-scheme principles[.]" Id. at 1457-58. The court also noted that "even where the insurer is not in breach of its duty to defend, [Cumis] counsel still owes very few duties directly to the insurer given the lack of an attorney-client relationship between them . . . ." Id. at 1457 n.10.

Further, the court held that there was no basis for a restitution claim: "Squire did not confer any benefit upon Hartford. Rather, Squire conferred a benefit on its clients . . . . That Hartford paid Squire for those services does not change this fact." Id. at 1459. Hartford's claim for accounting was also dismissed because it was simply an extension of Hartford's reimbursement cause of action. Id. at 1460 n.12. The court

17

1 declined to reach the issue of whether an insurer in breach of its
2 duty to defend could pursue a claim for fraudulent billing against
3 Cumis counsel. Id. at 1460.
4 　　In light of J.R. Marketing, the Court finds as follows.
5 Travelers cannot maintain an action for breach of fiduciary duty or
6 accounting against N&D in connection with any legal services
7 rendered by N&D prior to Travelers' agreement to provide Centex
8 with a defense in each underlying action. Prior to Travelers'
9 acknowledgement of its duty to defend, N&D could not have plausibly
10 owed Travelers a fiduciary duty, since during this period, N&D's
11 sole duty was to Centex. Under Iqbal and Twombly, Travelers'
12 conclusory allegations to the contrary need not be taken as true.
13 See, e.g., 1AC ¶¶ 185 (attorney-client relationship existed "as a
14 matter of law"), 186 ("N&D . . . owed fiduciary duties to both
15 Centex and Travelers"). Likewise, since N&D did not directly
16 confer a benefit on Travelers during this period, Travelers cannot
17 maintain an action for accounting, which is simply an extension of
18 a claim for restitution or reimbursement. See J.R. Marketing, 216
19 Cal. App. 4th at 1640 n.12.
20 　　However, the Court declines to dismiss Travelers' claims for
21 breach of fiduciary duty and accounting as they relate to legal
22 work performed by N&D after Travelers agreed to provide Centex with
23 a defense in the underlying actions. During this period, N&D had
24 two clients: Centex and Travelers. See Purdy v. Pac. Auto. Ins.
25 Co., 157 Cal. App. 3d 59, 76 (Cal. Ct. App. 1984) (attorney
26 retained by insurer to defend insured has two clients). As N&D was
27 never appointed as Cumis counsel, J.R. Marketing is not on point
28 here. N&D argues that whether or not N&D was Cumis counsel is

18

1  irrelevant, since Travelers, like Hartford, breached its duty to
2  defend.  However, the Court has yet to make such a finding, and it
3  cannot conclude from the facts pled that Travelers breached its
4  duty to defend in each of the underlying construction defect
5  actions.[8]
6       Accordingly, N&D's motion to dismiss is GRANTED in part and
7  DENIED in part.  In both the '88 and '371 Actions, Travelers'
8  claims for accounting and breach of fiduciary duty are DISMISSED
9  WITH PREJUDICE as to N&D to the extent that those claims relate to
10 legal work performed by N&D prior to Travelers' agreement to
11 provide Centex with a defense in the underlying actions.
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///

---

[8] The Court has addressed Centex's assertion that Travelers breached its duty to defend in many of the underlying actions at issue here in a related case, Travelers Property Casualty Company of America v. Centex Homes, Case No. 11-3638-SC.  As the parties have not discussed how the orders filed in the related case impact the instant actions, neither will the Court.

19

## V. CONCLUSION

The following conclusions relate to both the '88 and '371 Actions.  Centex's motion to dismiss is GRANTED.  Travelers' UCL claims are DISMISSED WITH PREJUDICE as to all Defendants, as are Travelers' claims for fraud to the extent that they are predicated on N&D invoices submitted after May 11, 2011.  The Court also DISMISSES WITH PREJUDICE Travelers' claims to the extent that they are predicated on the Bennett, Mir Ali, Mira Loma, Spicer and Yunker Actions.  Centex's motion to strike is DENIED.  N&D's motion to dismiss is GRANTED in part and DENIED in part.  The Court DISMISSES WITH PREJUDICE Travelers' claims for accounting and breach of fiduciary duty as to N&D, but only to the extent that those claims relate to legal work performed by N&D prior to Travelers' agreement to provide Centex with a defense in the underlying actions.

IT IS SO ORDERED.

Dated: August 26, 2013

_____
UNITED STATES DISTRICT JUDGE

20